MINNESOTA MILK PRODUCERS,
et al., Plaintiffs,

v.

Dan GLICKMAN, Secretary, United
States Department of Agriculture,
Defendant.

No. CIV. 4–90–31 (DSD/JMM).

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 3, 1997.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiffs' motion for summary judgment. Based on a review of the file, record, and proceedings herein, the court grants plaintiffs' motion with regard to the Class I differentials in the 28 surplus and balanced milk marketing orders and any deficit order that does not rely directly or indirectly on alternative supplies from the Upper Midwest orders.

## BACKGROUND

This case has a lengthy procedural history. Currently before the court is plaintiffs' fourth motion for summary judgment. On two prior occasions this case has come before judges of this court, and on both occasions proposed amendments to the Class I pricing scheme of the federal milk marketing orders promulgated by the Secretary of Agriculture (hereafter "Secretary") under the Agricultural Marketing Agreement Act, 7 U.S.C. § 608c(*l*) *et seq.*, (hereafter the "Act") have been found arbitrary and capricious. On each occasion the court found that the Secretary had failed to consider the statutory factors required by § 608c(18) of the Act and remanded for further consideration. In its two prior orders in this case, the court has attempted to explain the different components making up the price of milk and how that price is determined. To the extent relevant here, the court refers to the discussion in those orders.

The court's first order concerning the final decision of the Secretary was issued on April 14, 1994. In evaluating the Secretary's final decision, the court held that

> [t]he Secretary's decision to retain the existing Class I pricing structure is tantamount to a finding that it continues to satisfy the requirements of the AMAA as set out in § 608c(18). This conclusion may or may not be supported by substantial evidence from the administrative hearing, but since explicit findings and explanations were not issued relative to the 608c(18) factors, the court is unable to make that determination.

Lynn A. Hayes, Patricia A. Jensen, Eric N. Olsen, Farmers Legal Action Group, St. Paul, MN, James T. Massey, Farmers Legal Action Group, Inc., Sisters, OR, for plaintiffs.

Patricia Cangemi, Assistant U.S. Attorney, Minneapolis, MN, Elizabeth A. Strange, U.S. Department of Justice, Civil Division, Washington, DC, for defendants.

Order of April 14, 1994 (Docket No. 122) at 19. In finding the Secretary's decision to be arbitrary and capricious, the court remanded the final decision to the Secretary for 120 days, during which time the Secretary was ordered to conduct any necessary hearings or other proceedings and then issue an amplified decision articulating the statutory bases of his decision to retain Class I differentials in the federal milk pricing program. In response, the Secretary issued his first amplified decision on August 17, 1994, in which he attempted to respond to the court's concerns and provide further explanation of why he did not change the Class I pricing structure and how this decision complied with § 608c(18).

Plaintiffs, however, again challenged the Secretary's decision, and faced again with the question of whether the Secretary had adequately considered the requisite factors, the court on May 16, 1996, again found that he had not done so. Specifically, the court determined that "[a]lthough the differentials are not intended to fully cover transportation costs, there is one irreducible fact implicit in the Secretary's analysis: a point of origin." Order of May 17, 1996 (Docket No. 147) at 6. The court held that the Secretary may not enforce such a single basing-point system without explaining "how it reflects full and reasoned consideration of the statutory factors." *Id.* at 7. The court remanded this matter a second time to the Secretary so he could, rather than simply restating his decision to retain the differentials, "make such findings and conclusions as reflect reasoned consideration of the § 608c(18) factors." *Id.* at 9. The court also remanded the case because the Secretary had not complied with the court's initial order that the Secretary consider the relevant factors with respect to the use of the M–W price. On remand, the court specifically asked the Secretary to: (1) make such findings and conclusions as reflect reasoned consideration of the § 608c(18) factors concerning the decision to retain the Class I differentials; and (2) explain how the § 608c(18) factors relate to the actual price received as the M–W price and how the M–W price reflects market-specific economic conditions.

The Secretary's second amplified decision was issued on September 10, 1996, and on March 3, 1997, plaintiffs brought this, their fourth motion for summary judgment. Plaintiffs again challenge various aspects of the federal milk pricing program and argue that the three decisions of the Secretary are arbitrary and capricious and not supported by record evidence.

## DISCUSSION

■ The court, in its two prior orders in this case, set out the standard for reviewing the Secretary's decisions. To repeat, review of an agency's construction of a statute requires a two-part analysis. If Congress has spoken to the precise issue, its intent must be given effect. *Chevron, U.S.A. Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Sierra Club v. Davies*, 955 F.2d 1188, 1193 (8th Cir.1992). If Congress has not spoken directly to the issue, the question is whether the agency's construction is permissible. *Id.*

As the court has already determined on two prior occasions, Congress has spoken to the precise issue in this case. In 7 U.S.C. § 608c(18), Congress provided that when the Secretary establishes a pricing system, such prices

shall ... be adjusted to reflect the price of feeds, the available supply of feeds, and other economic conditions which affect market supply and demand for milk or its products in the marketing area to which the contemplated marketing agreement, order, or amendment relates. Whenever the Secretary finds, upon the basis of the evidence adduced at the hearing required by section 608b of this title or this section, as the case may be, that parity prices of such commodities are not reasonable in view of the price of feeds, the available supply of feeds, and other economic conditions which affect market supply and demand for milk and its products in the marketing area to which the contemplated agreement, order, or amendment relates, he shall fix such prices as he finds will reflect such factors, insure a sufficient quantity of pure and wholesome milk to meet current needs and further to assure a level of farm income adequate to maintain

productive capacity sufficient to meet anticipated future needs, and be in the public interest.

7 U.S.C. § 608c(18). While the Act mandates that each milk marketing order's price reflect economic conditions affecting supply and demand in that particular marketing order, the court previously found that no record evidence was presented by the Secretary in his final or first amplified decisions to show that he had considered the requisite statutory factors of § 608c(18) in promulgating the Class I prices.

▮▮▮ In determining whether an agency decision is arbitrary and capricious, "the reviewing court must determine whether the decision was based on the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park,Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). The scope of review is a narrow one and the court should not substitute its judgment for that of the agency. *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). As stated previously,

> Normally an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, failed to consider an important aspect of the problem, offered an explanation for its decision which runs contrary to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view of the product of agency expertise.

*Id.*

### 1. The Class I Differentials

▮▮▮ Plaintiffs contend that the Secretary's second amplified decision is still deficient with regard to the Class I differentials. They argue that while the court in its second remand order directed the Secretary to make specific findings and conclusions that demonstrate reasoned consideration of all the pricing factors mandated by the Act, the Secretary has failed to do so. Instead of providing administrative record evidence to demon-

strate why distance from Eau Claire, Wisconsin, is a relevant consideration in setting the level of each marketing order's Class I differential, plaintiffs argue the Secretary merely rephrases propositions the court used as the basis for its finding of a single-basing point. Pls.' Mot. for Summ. J. After Second Remand Order (Docket No. 153) at 8 (hereafter "Plaintiffs' Memo.") Plaintiffs also contend that the Secretary's findings with regard to the twenty-eight surplus or balanced marketing orders [1] belie any rational connection between the supply and demand conditions of these orders' markets and the Secretary's explanation for the level of their Class I differentials. Plaintiffs argue that the Secretary's explanation that the Class I differentials reflect the cost of transporting milk does not support the level of differential in these markets in light of local supply and demand conditions.

Defendant responds by pointing out that the differentials deal only with the transportation costs of milk. The M–W, on the other hand, deals with the many supply and demand factors referenced in § 608c(18). Because the rulemaking at issue here dealt only with the differentials, the § 608c(18) factors were not considered and there is no record to which the Secretary can point.

After reviewing the second amplified decision, the court comes to the conclusion that the Secretary again has failed to fulfill his statutory mandate. Much of the Secretary's latest effort is dedicated to a review of the historical development of the classified pricing system, the realities of the dairy industry as it relates to the marketing of milk, the precise nature of the rulemaking underlying this litigation, and the current status of the classified pricing system. While this proves useful as background information, it does nothing to satisfy the court that the Secretary has considered the § 608c(18) factors in setting the Class I differentials.

The Secretary's response to the court's request that he make such findings and conclusions as reflect reasoned consideration of

---

1. Of the forty marketing orders analyzed in the final administrative decision, twenty-one were found to be balanced markets and seven were found to carry surplus milk supplies. A balanced market is one with sufficient milk to meet demand plus a 40% reserve. A surplus market produces milk in excess of the demand and reserve percentage.

the § 608c(18) factors concerning the decision to retain the Class I differentials is inadequate. The Secretary's efforts are spent trying to debunk the court's conclusion that a single-basing point system is being used. While the Secretary goes to great lengths to show that distance from Eau Claire is not a priority in setting the Class I differentials, and that in fact a South–North "ripple effect" is at work, nowhere in the second amplified decision does the Secretary point to record evidence that supports his consideration of the relevant factors. As plaintiff points out, the Secretary "does not mention the actual level of a single order's class I differential, much less show how a specific differential is in any way related to the local market's need to attract Class I milk." Plaintiffs' Memo. at 7. Even if the Secretary has shown that no single basing point is being used, he still has not justified, using record evidence, the "ripple effect" leading to the Upper Midwest.

This lack of evidence convinces the court that the Secretary is either unwilling to explain why the Class I differentials are set at their current level or is unable to do so with record evidence. Whichever is the case, the Secretary's conclusory statements explaining why the marketing orders' Class I differentials are set at their current levels is insufficient. No record evidence has been provided demonstrating that these differentials are set at levels reflecting the supply and demand conditions and other required considerations in each order. If, as the Secretary contends, no record evidence is available because the Rulemaking at issue did not consider the factors, then the Secretary should have conducted further proceedings to build such a record.

■ The court is especially wary of the Secretary's explanation for the level of Class I differentials in the twenty-eight balanced and surplus orders. In these orders, the Secretary has found that sufficient milk supplies exist to meet the demand for milk within that order and to cover all shipments out of the order to meet Class I demands in other order areas. Yet, the Secretary contends that these orders' class I differentials are set to attract supplies from the Upper Midwest to either meet Class I demand in that order or replace milk shipped out of the order to meet the demand for Class I milk in other orders. If the order is a balanced or surplus market, however, by the Secretary's own definition no alternative supplies are required. Therefore, the Secretary's explanation for the Class I differentials in the balanced and surplus orders does not reflect his findings regarding supply and demand conditions there. This is in violation of § 608c(18), which, as already discussed, dictates that the price of milk be set to reflect local supply and demand conditions.

Because the differentials go against the express intent of Congress, as codified in § 608c(18), that the price of milk reflect market-specific supply and demand conditions in each order, the court will not defer to the agency in this case.

## 2. The M–W Price

■ In its second remand order, the court explicitly directed the Secretary to explain how the § 608c(18) factors relate to the actual price received as the M–W price and how the M–W price reflects market-specific economic decisions. In that order, the court stated that "it is clear that the Secretary simply assumes that the M–W price 'captures' [the price and supply of feeds and other factors] without providing any evidence that this actually is the case." Order of May 17, 1996 at 6. In the second amplified decision, the Secretary responds by pointing to the national hearing held in 1992 to address the M–W price. At this separate hearing, the Department of Agriculture addressed the M–W price and ten different proposals for change in light of the supply and demand factors contained in § 608c(18). In evaluating the proposals submitted as part of this proceeding, the Secretary indicated that any proposal to change the M–W would have to be justified under the § 608c(18) factors. As a result of this hearing, the Secretary has determined that a modified M–W price, now referred to as the Basic Formula Price ("BFP"), satisfies the statutory pricing criteria of the Act.

The court finds that the Secretary's reference to the second administrative hearing, as discussed in the second amplified decision, deals with the § 608c(18) factors and the M–

W price. Accordingly, the court finds that the Secretary has fulfilled his burden with respect to this aspect of the Class I price of milk. In so holding, the court notes that the M–W has never been the focus of plaintiffs' challenge and that plaintiffs do not seek any form of injunctive relief related to the M–W. Indeed, even in arguing against the M–W, plaintiffs return to their argument that excessively high Class I differentials are dictating supply. *See* Plaintiffs' Memo. at 21.

■ While the court recognizes that the issues of relevance here may become moot after the Secretary promulgates his new milk marketing order plan pursuant to the 1996 Farm Bill, such possibility does not justify further delay by this court. The Secretary has done nothing more than provide a series of conclusory statements explaining the levels of the marketing orders' Class I differentials. No record evidence has been provided to demonstrate compliance with the § 608c(18) requirement that the differentials reflect each order's specific supply and demand conditions, and the levels set in the twenty-eight balanced and surplus orders appear to be in conflict with the Secretary's own evidentiary findings. The second amplified decision is therefore found arbitrary and capricious and further consideration by the Agency is again required. The court, however, concludes that no purpose will be served in remanding this case yet again to the Secretary to give him a third opportunity to explain his decision. The Secretary seems either unwilling or unable to comply with this court's remand orders, and the court will not delay action yet again.

### CONCLUSION

Based on a review of the file, record and proceedings herein, the court concludes that plaintiffs are entitled to summary judgment with regard to the Class I differentials in the 28 surplus and balanced milk marketing orders and any deficit order that does not rely directly or indirectly on alternative supplies from the Upper Midwest orders. Therefore, IT IS HEREBY ORDERED that:

■ 1. The Class I differentials in all surplus and balanced marketing orders and all deficit orders that do not rely on direct shipments of alternative milk supplies from the Upper Midwest or from other deficit orders which in turn rely on the Upper Midwest for replacement supplies are unlawful due to the Secretary's failure to consider the factors mandated by the Agricultural Marketing Agreement Act, codified at 7 U.S.C. § 608c(18);

2. The Secretary is enjoined from enforcing these differentials;

3. The final, first amplified and second amplified decisions regarding Class I differentials are found to be arbitrary and capricious because they are not supported by substantial evidence in the record and do not describe findings regarding all of the § 608c(18) factors.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**